UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**REBECCA MARIE SHARP, as**
**Personal Representative of the Estate**
**of Carson Kaplan Sharp, deceased,**

        **Plaintiff,**        CASE NUMBER:05-70986
                                HONORABLE VICTORIA A. ROBERTS

**v.**

**OAKWOOD UNITED HOSPITALS and/or**
**OAKWOOD HEALTH CARE, INC. and/or**
**OAKWOOD UNITED HEALTH CARE d/b/a**
**OAKWOOD HOSPITAL; UDORO G.**
**UWEDJOJEVWE, M.D.; PROFESSIONAL**
**EMERGENCY CARE, P.C. and**
**ERIC KETCH AM, M.D.,**
        **Defendants.**
_____/

**ORDER**

**I.    INTRODUCTION**

This matter is before the Court on several pleadings filed by the parties: 1) Defendants' First Amended Answer To Complaint; 2) Defendant Oakwood Hospitals' Memorandum of Law; 3) Defendant Oakwood Hospitals' Supplemental Memorandum of Law and Request for Evidentiary Hearing; 4) Defendant Oakwood Hospitals' Request to Add Supplemental Authority; 4) Plaintiff's Response to Defendants Amended Affirmative Defenses and Defendants Memoranda of Law Re: Judicial Estoppel; 5) Plaintiff's Supplemental Response to Oakwood Hospitals' Reply to Plaintiff's Response to Defendant's Memoranda of Law Re: Application of Judicial Estoppel; 6) Plaintiff's Second Supplemental Brief; and 7) Defendant Eric Ketcham's Memorandum of Law.

1

Although none of the pleadings is properly titled, it appears that Defendants are requesting: 1) leave to amend their Answer, and 2) summary judgment.

For the following reasons, the Court **GRANTS** Defendants' request to amend and **DENIES** Defendants' request for application of the doctrine of judicial estoppel and a finding that Plaintiff lacks standing.

## II.   BACKGROUND

Rebecca Marie Sharp ("Mrs. Sharp" or "Plaintiff") is the mother of Carson Kaplan Sharp who died unexpectedly on March 15, 2003. Rebecca Sharp and her husband, Marc Sharp, filed for bankruptcy on March 18, 2003, and did not declare a wrongful death claim as an asset of their bankruptcy estate. The Sharps received discharge of the bankruptcy on June 25, 2003. One year and nine months later, Mrs. Sharp filed a wrongful death action against Oakwood Hospitals.

## III.   ARGUMENTS OF THE PARTIES

### A.   Defendants Memoranda of Law

Defendants seek to amend their Answer to include the affirmative defenses of judicial estoppel and lack of standing. They argue that these affirmative defenses preclude Plaintiff from maintaining her suit.

First, Defendants assert that Mr. and Mrs. Sharp, as of the date of their filing bankruptcy, had an interest in an action predicated on their son's wrongful death, which was not disclosed to the bankruptcy court. Second, Defendants contend that the Sharp's interest in the wrongful death action vests in the bankruptcy trustee. Thus, they contend, the Trustee in bankruptcy is the only person who has standing to pursue this

cause of action. Third, they assert that the doctrine of judicial estoppel is applicable because Mrs. Sharp failed to disclose her potential wrongful death claim. Defendants cite several cases from the Sixth Circuit applying the doctrine of judicial estoppel. None, however, discusses the failure of a wrongful death estate representative to disclose assets in a bankruptcy proceeding.

      **B.    Plaintiff's Response to Defendants Amended Affirmative Defenses and Defendants Memorandum of Law Re: Judicial Estoppel**

In response, Plaintiff argues that her bankruptcy petition was prepared prior to the sudden and unexpected death of her son. Mrs. Sharp explains that the petition was filed three days after her son's death by her attorney in accordance with their prior arrangements. She claims to have been unaware of any potential suit for her son's death until approximately four months after the filing of the petition and almost two weeks after her debts were discharged. Mrs. Sharp admits that her attorney may have erred by not disclosing to the bankruptcy court a potential asset. Nonetheless, she argues that this is not fatal to her claim because she is acting not as an individual but as the representative of her son's estate. In addition, Mrs. Sharp claims that there remains no basis to invoke the doctrine of judicial estoppel since the bankruptcy proceedings have been reopened and creditors will be notified of any potential assets.

      **C.    Defendants Supplemental Memorandum of Law and Request For Evidentiary Hearing**

Defendants, to the contrary, assert that the question of Plaintiff's standing to file claims for individual damages and claims as a beneficiary of the Estate, has nothing to do with the distinction between an individual and a personal representative. And, as a

consequence, Plaintiff still lacks standing to bring this suit.  Defendants also contend that the facts surrounding Plaintiff's bankruptcy filing are improbable.  They request an evidentiary hearing to confirm the facts regarding the bankruptcy petition and the Sharps' referral to a medical malpractice attorney.

## IV.     APPLICABLE LAW AND ANALYSIS

### A.     Amending Answer to Include Affirmative Defenses

On June 21, 2006, Defendants filed a First Amended Answer to Complaint without requesting leave of court.  Federal Rule of Civil Procedure 15(a) provides that "a party may amend [its] pleadings once as a matter of course at any time before a responsive pleading is served, or . . . only by leave of court or by written consent of the adverse party."  Instead of seeking leave, the Defendants briefed the substance and validity of their proposed amendments.  The standard for leave to amend set forth at Fed.R.Civ.P. 15(a) provides that "leave shall be freely granted when justice so requires."  "The decision as to whether justice requires the amendment is committed to the district court's sound discretion."  *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1990).

A court may refuse to allow the amendment if it finds undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Robinson v. Michigan* Consol. Gas Co., 918 F.2d 579, 591 (6th Cir. 1990).  In the absence of any these factors, the moving party should be afforded the opportunity to amend.

Plaintiff argues that leave should be denied because Defendants raised these defenses for the first time at a recent settlement conference. While delay by itself is not sufficient reason to deny a motion to amend, "notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989); *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001). Moreover, delay will become "undue" at some point, "placing an unwarranted burden on the court," or "'prejudicial,' placing an unfair burden on the opposing party." *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002).

The Sixth Circuit held that it is not an abuse of discretion for a district court to deny an amendment that is unduly delayed or prejudicial. *Bridgeport Music, Inc. v. Dimension Films, et al.*, 410 F.3d 792 (6th Cir. 2005)( finding that an amendment on the eve of the close of discovery would be prejudicial to defendants and unduly delay trial.). In *Bridgeport*, the District Court requested that the plaintiff's show good cause why the court should allow amendment of their complaint to add a claim and parties after the court's deadline for such amendments, which the plaintiff failed to do. *Id.* at 806. Similarly, Defendants in their Memoranda of Law do not proffer a reason for their delay. When amendment is sought at a late stage in the litigation, "there is an increased burden to show justification for failing to move earlier." *Wade*, 259 F.3d at 459.

With respect to delay - and whether it is unduly - Defendants assert that they recently discovered Plaintiff's bankruptcy proceedings, and therefore, could not have sought to amend earlier. Plaintiff argues that Defendants in fact have been aware of her bankruptcy proceedings since the filing of the complaint. Plaintiff's complaint,

5

however, does not mention her bankruptcy proceedings.  Therefore, it is difficult for the Court to discern whether, Defendants in fact were on notice.  Even if they were, the Court would still need to find that Plaintiff would be unfairly prejudiced by the amendments.  The party opposing the motion to amend must show that delay is accompanied by prejudice or bad faith or that the moving party was purposefully dilatory.  Plaintiff has not shown that any real prejudice will result if the amendment is allowed.

Given the limited facts and the parties' failure to brief these issues, the Court cannot say that Defendants are being purposefully dilatory or acting in bad faith.  Nor can the Court say that Plaintiff will be unduly prejudiced by the timing of the proposed amendment.  Delay that is neither intended to harass nor causes any ascertainable prejudice is not a permissible reason -- in and of itself -- to disallow an amendment of a pleading.  *Security Ins. Co. of Hartford v. Kevin Tucker & Assoc., Inc.*, 64 F.3d 1001, 1009 (6th Cir. 1995).  The Court will, therefore, allow Defendants to amend their Answer.

**B.    Summary Judgment**

Defendants do not explicitly request summary judgment.  The wording of their affirmative defenses and pleadings, however, state that they are requesting findings as a matter of law.[1]  Thus, the Court will treat this as a request for summary judgment

---

[1] In their Amended Answer, Defendants also list as an affirmative defense that "the claims should be barred by operation of law pursuant to rule 56(c)."

pursuant to Rule 56, and Plaintiff has responded.[2]

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A fact is "material" if it might affect the outcome of a case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-252.

### i.     Standing to Bring Wrongful Death Claim

Defendants argue that this Court should find that Mrs. Sharp lacks standing to bring a wrongful death suit because she failed to disclose the claim in her bankruptcy proceedings. Standing is a question of subject matter jurisdiction and an absolute jurisdictional requirement to sue in federal court. *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472 (1982). If Defendants filed a separate motion to dismiss on these grounds, the Court would have to "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994); *see also Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). And, even though the Plaintiff has the obligation to establish jurisdiction by competent

---

[2]In fact, the Court had a telephone conference on September 28, 2006. Counsel acknowledged that if a formal summary judgment motion was filed, it would not say more than was said in these papers and the response would not be any different.

proof, the court may look beyond the jurisdictional allegations of the complaint and view any evidence submitted on the issue to determine whether in fact subject matter jurisdiction exists. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125 (6th Cir. 1996).

Defendants' argument that Mrs. Sharp lacks standing is unpersuasive. Even if Defendants negligently caused Carson Sharp's death, the argument goes, Mrs. Sharp cannot sue because her cause of action became the property of the bankruptcy court when she and her husband declared bankruptcy in 2003. Section 541(a)(1) of the Bankruptcy Code provides that the bankruptcy estate is comprised of " . . . all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). It is well established that the "interests of the debtor in property" include "causes of action." *Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir. 1988). Those actions remain part of the bankruptcy estate and may only be dealt with by the bankruptcy trustee unless the claim is abandoned pursuant to the requirements of Title 11, United States Code section 554(a) or (b). Defendants correctly assert that a debtor loses standing to pursue any causes of action belonging to her prior to filing a bankruptcy petition. *Id.*

It is uncontested that Mrs. Sharp did not schedule the wrongful death claim as an asset of her bankruptcy estate. Since the cause of action was not scheduled as a potential asset, it could not have been abandoned by the bankruptcy trustee. Furthermore, Plaintiff argues that the cause of action could not have become part of the bankruptcy estate created in March (debts discharged in June) because she was not aware of any possible negligence until July 8, 2003. Defendants, however, assert that

2:05-cv-70986-VAR-RSW   Doc # 60   Filed 10/23/06   Pg 9 of 17   Pg ID 694

Plaintiff could have listed the possible death claim as property with the bankruptcy court before her bankruptcy was administratively closed in September of 2003. They also request an evidentiary hearing to explore Plaintiff's failure to disclose her possible claim to the bankruptcy court. Although Plaintiff's failure to disclose would ordinarily preclude this Court from exercising subject matter jurisdiction over the pending claim, the fact that Mrs. Sharp filed this suit as her son's personal representative and not individually requires a different analysis.

A related issue then - also raised by Defendants - is Mrs. Sharp's standing to sue. If the wrongful death claim belonged to the debtor, Mrs. Sharp, she would have no standing to pursue the claim here because it became part of the bankruptcy estate. The issue, then, is whether a wrongful death action belongs to a debtor, more specifically, whether Carson Sharp's wrongful death claim belonged solely to this debtor, Rebecca Sharp. Defendants essentially argue that Mrs. Sharp gave up her right to sue on any matter connected with her son's death when she and her husband declared bankruptcy. Plaintiff asserts that she clearly does have a right to sue. The Court did not find, and counsel has not provided, any Sixth Circuit or Michigan case law addressing this issue.

The Michigan statute governing wrongful death actions provides that a wrongful death action may only "be brought by, and in the name of, the personal representative of the estate of the deceased person." M.C.L. 600.2922(2).

The Michigan wrongful death statutory scheme makes clear that an action does not exclusively belong to the person entitled to bring the action under M.C.L. 600.2922(2). Rather, that person brings the action in a representative capacity. In an

9

unpublished opinion, a North Dakota District Court held that a wrongful death claim does not belong exclusively to the debtor since the claim is brought in a representative capacity and not in a personal capacity. *Skavlem v. Frankovic*, No. Civ A2-99-56, 1999 WL 33283341 (D.N.D. 1999). Although *Skavlem* is the only persuasive authority, the facts are strikingly similar to the present case.

In *Skavlem*, the defendants filed a motion to dismiss the plaintiff's wrongful death claim arguing that plaintiff lacked standing and should be judicially estopped from pursuing her claim. Skavlem was a widow whose husband died in a motor vehicle accident in November of 1997. In February of 1998, she filed for bankruptcy and did not declare a wrongful death claim as an asset of the bankruptcy estate. Eight months later, Skavlem commenced a wrongful death action.

The Court, noting this as an issue of first impression, found that even though the plaintiff did not schedule the wrongful death claim as an asset of her bankruptcy estate, she still had standing to sue as the representative of her husband's estate. Under North Dakota law the representative who brings the wrongful death action does so in a representative capacity for the exclusive benefit of the heirs at law; and thus, as a representative only of the estate, Mrs. Skavlem did not lack standing. The Court also indicated Mrs. Skavlem's bankruptcy case had been reopened for the benefit of the creditors, which the court supported because plaintiff's creditors would have an opportunity to claim any recovery Skavlem might receive from the estate.

Similarly, in Michigan, wrongful death actions may be brought only in the name of the personal representative of the estate of the deceased. M.C.L. 600.2922(2). The personal representative who asserts a cause of action on behalf of a decedent stands in

the decedent's place for all purposes incident to the enforcement of that claim. *Burney v. PV Holding Corp.*, 218 Mich. App. 167 (1996), *citing Scott v. Henry Ford Hosp.*, 199 Mich.App. 241, 243, n.1 (1993).

Because the personal representative stands in the decedent's place for all purposes, Plaintiff's failure to disclose her potential wrongful death claim to the bankruptcy court does not affect her standing in this case. Mrs. Sharp's potential proceeds from the estate of Carson Sharp do not prevent her from standing in his shoes and asserting his rights under the wrongful death statute.[3] The Court, therefore, finds that Plaintiff has standing.

### ii. Judicial Estoppel

The Defendants argue that because Mrs. Sharp did not schedule these claims against Defendants as assets, she should be judicially estopped from prosecuting this suit. Judicial estoppel bars a party from asserting a position that is contrary to one the party has asserted under oath in a prior proceeding, where the court adopted the contrary position "either as a preliminary matter or as part of a final disposition." *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990). Judicial estoppel is an "equitable doctrine meant to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on

---

[3] Defendants also argue that Plaintiff lacks standing to collect damages in her individual capacity. It should be noted that any proceeds she may recover as a beneficiary is a matter strickly between Mrs. Sharp and the bankruptcy court. Further, Plaintiff also requested an order amending the caption to name the bankruptcy trustee as plaintiff and Gregory M. Bereznoff, Mrs. Sharp's current counsel, as special counsel. Because Plaintiff has standing to pursue this claim, amendment of the caption is not necessary.

one position, then arguing the opposite to suit an exigency of the moment." *Id.* According to the Sixth Circuit, judicial estoppel should be applied with caution to "avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement*.*" *Embanks v. CBSK Financial Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004).

The United States Supreme Court articulated several factors for Courts to consider in determining the applicability of judicial estoppel.  A court must consider whether: (1) a party's later position must be clearly inconsistent with its earlier position; (2) the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and (3)  the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.  *New Hampshire v. Maine*, 532 U.S. 742 (2001).  In *New Hampshire*, the Supreme Court noted that "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation or principle." *Id.* at 750.  The Sixth Circuit has also stated that these factors are not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002)

Here, Defendants note that Mrs. Sharp signed the original petition and subsequent schedules without listing any contingent or unliquidated claims.  Yet, six days before the bankruptcy court entered a final decree and closed the estate, Mrs. Sharp filed a petition in the probate court to be appointed personal representative of the

12

decedent's estate. The papers indicated that the sole asset of the estate was this wrongful death action. (Exh. B, Defendant's Memorandum of Law). Defendants also point out that Rebecca and Larry Sharp are the only heirs entitled to receive any damages recoverable under the Michigan Wrongful Death Act. Defendants further argue that Plaintiff only reappointed the bankruptcy trustee and reopened the estate on July 10, 2006 as a subsequent remedial attempt to cure the omission.

Plaintiff argues that judicial estoppel is not appropriate because the error was unintentional.[4] Plaintiff explains that she should not be penalized because she acted in good faith by informing her bankruptcy attorney of the possible existence of a claim. In an affidavit filed with the Court, her attorney states, "I did not list the potential cause of action, made known to me after the date of discharge, among the assets of the Sharp bankruptcy, and in fact, advised Mr. and Mrs. Sharp that such did not have to be listed in good faith because there were no proceedings pending referable to the Estate of Carson Kaplan Sharp." (Daines Aff. 2). He also states, "that Rebecca and Larry Sharp were cooperative during the bankruptcy proceedings and, on information and belief, would have allowed me to list the potential cause of action as an asset in Bankruptcy Court had I advised them that such was required." *Id.*

For the reasons stated above, the Defendants argue that the Plaintiff's claim of

---

[4]Plaintiff suggests that substituting the bankruptcy trustee would cure this omission. "It is well settled that the right to pursue causes of action formerly belonging to the debtor . . . vests in the trustee for the benefit of the estate." *Waldschmidt v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir. 1997). If the Trustee was officially substituted as the Representative of Carson Sharp's Estate, the judicial estoppel analysis would not be different.

mistake is suspect and that she should be bound by her attorney's actions.[5]  Generally a litigant is bound by the errors of his or her attorney.  *See Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962).  It is well-settled, however, that judicial estoppel does not apply where the prior inconsistent position occurred because of "mistake or inadvertence." *Browning*, 283 F.3d at 776 (6th Cir. 2002).  Failure to disclose a cause of action may be deemed inadvertent where (1) "the debtor lacks the knowledge of the factual basis of the undisclosed claims," or (2) "the debtor has no motive for concealment."  *Id.* Daines's affidavit establishes that Plaintiff and her counsel lacked knowledge of the wrongful death claim prior to the bankruptcy discharge.  In his affidavit, Daines states that he believed that disclosure was unnecessary because there were no proceedings pending prior to the administrative closure of the bankruptcy in September 2003.  For this reason, he advised Plaintiff not to present the information regarding a potential claim to the bankruptcy court.

The Court is persuaded by Plaintiff's assertion that she relied in good faith on the advice of her counsel.  Moreover, Plaintiff's inadvertence prior to the bankruptcy discharge is a compelling reason to justify departing from the general rule set forth in *Link*.  *See Coleman v. Am. Red Cross*, 23 F.3d 1091, 1094-95 (6th Cir. 1994) ("Despite the Supreme Court's unequivocal language, this court, like many others, has been

---

[5]Defendants assert that Plaintiff's attorney, Mr. Daines, is an experienced bankruptcy attorney who would have been aware of the law regarding judicial estoppel and unasserted potential claims.  In addition, Defendants provide the Court with the docket sheet of *Kobs v. Robinson and St. Joseph Mercy Hospital-Pontiac.*  Mr. Daines was the attorney for the Kobs.  Defendants contend that Mr. Daines failed to disclose an asset and received a discharge, which was later discovered by defense counsel and amended.  The Court cannot tell whether these allegations are true based on a docket sheet.

extremely reluctant to uphold the dismissal of a case merely to discipline an attorney . . . Dismissal is usually inappropriate where the neglect is solely the fault of the attorney.").

The issue here is whether Plaintiff pursued a "position" in the bankruptcy court from July 2003, when she became aware of a potential claim, to September 2003, the date of the administrative discharge, that is inconsistent with the pursuit of the current wrongful death claim.  *See Federal Home Loan Mortgage v. Hulet, et al*, No. 04-60198, 2006 WL 36758 (E.D.Mich.)(holding that judicial estoppel forbids the use of intentional self contradiction as a means of obtaining unfair advantage).

Although Defendants direct the Court's attention to recently published cases, these cases are inapposite.  *See In re Johnson, debtor v. Louis Case Intermediary Sch. Dist. and Kevin Magin*, No. GK 04-02982, 2006 WL 2052068, July 14, 2006 (Bkrtcy. W.D.Mich.) *and Scott v. Dress Barn*, Inc., No. 04-1298-T-AN, 2006 WL 962534 (W.D.Tenn.).  Unlike the present case, the *In re Johnson* debtor filed for bankruptcy after she had already commenced a wrongful death action in court.  The Court, therefore, found the debtor's action were in bad faith and applied judicial estoppel.  *Id.* Likewise in *Scott*, less than a month after filing a civil rights action, the plaintiff filed a voluntary petition for bankruptcy without disclosing the lawsuit as an asset.  Based on this, the Court held that neither plaintiff's later amended petition nor her alleged reliance on her bankruptcy attorney's advice negated her bad faith.  While it is true that, here, Plaintiff did not list a wrongful death claim as an asset in her bankruptcy proceeding, at that time no claim was pending.  Further, no determination had been made that a claim would be filed by the time the Sharp debt was discharged.  In fact, Plaintiff did not file a claim until approximately 18 months later.  Thus, the Court finds no clear inconsistency

15

in this case.

Moreover, judicial estoppel is an equitable doctrine. As the *Skavlem* Court stated, "applying the doctrine in this case, however, would lead to a most inequitable result." If the court declines to hear this case, defendants, potential tortfeasors, would gain an undeserved windfall at the expense of the bankruptcy creditors and Carson Sharp's heirs. In addition to Mr. and Mrs. Sharp, Carson is survived by two half-brothers and a paternal grandmother.[6] Under Michigan law, they, too, are entitled to seek damages for Carson's wrongful death. *See* M.C.L. § 600.2922(3); *see also Crystal v. Hubbard*, 414 Mich. 297 (1982); *Robinson v. City of Benton Harbor*, 807 F.Supp. 193 (W.D.Mich. 1994).[7] Application of judicial estoppel would most certainly harm Carson's "next of kin." On the other hand, an unfair detriment will not be imposed upon Defendants if Plaintiff is not estopped. Therefore, the facts establish that application of judicial estoppel would be an inappropriate resolution, rather than a necessary judicial measure to protect the Court's interest.

The Court **DENIES** Defendants' request for application of the doctrine of judicial estoppel.

    **iii.**     **Evidentiary Hearing**

---

[6]On September 28, 2006, during a telephone conference with the Court, Plaintiff's counsel stated that Carson Sharp was survived by two half-siblings and a paternal grandmother.

[7]M.C.L. § 600.2922(3) provides that proceeds may be distributed to any of the following who suffered damages: the deceased's spouse, children, descendents, parents, grandparents, brothers and sisters, and, if none of these persons survive the deceased, then those persons to whom the estate of the deceased would pass under the laws of intestate succession determined as of the date of the death of the deceased.

Defendants request an evidentiary hearing. Before the Court disposes of its motion, if the Court has any questions as to the applicability of judicial estoppel or the challenge to standing, Defendants request the Court to hold an evidentiary hearing to elicit testimony from Mr. Daines and the Sharps concerning the events during the bankruptcy filing. It is unclear how an evidentiary hearing would shed further light on the issues before the Court. The Court finds there is no genuine issue of material fact, and **DENIES** the request for an evidentiary hearing.

### V.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' request to amend, **DENIES** Defendants' request for an evidentiary hearing, and finds as a matter of law that: (1) Plaintiff has standing and (2) the doctrine of judicial estoppel is inapplicable.

**IT IS SO ORDERED**.

                                    s/Victoria A. Roberts
                                    Victoria A. Roberts
                                    United States District Judge

Dated: October 23, 2006

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on October 23, 2006.

s/Linda Vertriest
Deputy Clerk

---